1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
2                    SOUTHERN DIVISION

3    UNITED STATES OF AMERICA,

4                   Plaintiff,
        -v-                              Case No. 15-20040
5
     LESHOUN DEANDRE BYRD,
6
                    Defendant.
7    _____/

8                      PLEA HEARING

9
             BEFORE THE HONORABLE JUDITH E. LEVY
10            UNITED STATES DISTRICT JUDGE

11                   NOVEMBER 7, 2016

12
     APPEARANCES:
13
     For the Plaintiff:    Carl D. Gilmer-Hill
14                         United States Attorney's Office
                           211 West Fort Street, Suite 2001
15                         Detroit, Michigan 48226

16   For the Defendant:    Steven F. Fishman
                           615 Griswold, Suite 1125
17                         Detroit, Michigan 48226

18

19

20

21

22

23        To Obtain a Certified Transcript Contact:
          Jeseca C. Eddington, RDR, RMR, CRR, FCRR
24            Federal Official Court Reporter
               United States District Court
25      200 East Liberty Street - Ann Arbor, Michigan 48104

November 7, 2016

1                                    **I N D E X**

2

3    MISCELLANY

         Proceedings...................................3
4        Certificate..................................33

Proceedings...................................3
Certificate..................................33

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

November 7, 2016

1        **P R O C E E D I N G S**

2              THE CASE MANAGER:  United States of America vs

3    Leshoun Byrd, case number 15-20040.  Counsel, please put your

4    appearances on the record.

5              MR. GILMER-HILL:  Good morning, your Honor.  Carl

6    Gilmer-Hill with the U.S. Attorney's Office appearing on

7    behalf of the United States.

8              THE COURT:  Thank you, very much.

9              MR. FISHMAN:  Good morning, Judge.  Steve Fishman on

10   behalf of Mr. Byrd.

11             THE COURT:  Thank you, very much, Mr. Fishman.  And

12   that's you, Mr. Byrd?

13             THE DEFENDANT:  Correct.

14             THE COURT:  Well, welcome.  Today is the date and

15   time that was set aside for a change of plea hearing in your

16   case, United States of America vs Leshoun DeAndre Byrd.  The

17   first thing I'm going to do, Mr. Byrd, is go over the purpose

18   of the hearing and how it will be conducted.  If at any time

19   you have a question or there's something that you'd like to

20   say, you have the opportunity to be heard today.

21             In light of the fact that you have a lawyer with you,

22   I suggest that you first turn to your lawyer and ask your

23   lawyer whether that would be an appropriate question to ask me

24   or Mr. Gilmer-Hill.  But do you understand you can speak up

25   today?

November 7, 2016

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Okay.  I'd like to begin by swearing you

3     in.  So please stand and raise your right hand.  Do you

4     solemnly swear or affirm to tell the truth, the whole truth,

5     and nothing but the truth in the matter here pending?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Okay.  Please be seated.  Next, I'm going

8     to ask you some questions to determine whether you're ready to

9     participate in the hearing today.  And I'll ask you questions

10    about the facts of the crime that you're alleged to have

11    committed and your decision regarding whether to change your

12    plea from not guilty or no contest to either guilty or

13    whatever it may be.

14         It's important that you tell the truth.  If you say

15    something here under oath that you know is not true, you could

16    be charged with committing perjury, another way of saying

17    lying under oath.  If you intentionally lie under oath, the

18    things you say can be used against you in that criminal

19    prosecution.  But also separately from that, I might not give

20    you credit that I would ordinarily give to someone who

21    truthfully pleads guilty.  And it could have an impact on your

22    sentence, which could be higher.  Do you understand that?

23         THE DEFENDANT:  Yes, I do.

24         THE COURT:  Okay.  So I'm going to begin with the

25    background questions and ask that you listen.  There's not too

```
 1    many of them.  First of all, what is your name?
 2              THE DEFENDANT:  Leshoun DeAndre Byrd.
 3              THE COURT:  And how old are you, Mr. Byrd?
 4              THE DEFENDANT:  I'm 37.
 5              THE COURT:  Okay.  And how far did you go in school?
 6              THE DEFENDANT:  High school.
 7              THE COURT:  Okay.  And I believe I know the answer to
 8    this, but it's still an important question.  Do you read and
 9    write English?
10              THE DEFENDANT:  Yes.
11              THE COURT:  And I had every reason to believe that
12    you do.  But the reason I ask you is I want to know whether
13    you could read and understand the legal documents that have
14    been a part of this case, the indictment and the -- if you've
15    seen a proposed Rule 11 plea agreement.
16              THE DEFENDANT:  Yes.
17              THE COURT:  Okay.
18              MR. FISHMAN:  Judge, there is no Rule 11 in this case
19    though.
20              THE COURT:  Okay.
21              MR. GILMER-HILL:  Well, there was one.  It was
22    rejected.
23              THE COURT:  Was there an offer of a Rule 11?
24              MR. FISHMAN:  There was.
25              THE COURT:  And did your client see it?
```

November 7, 2016                                                  6

```
 1              MR. FISHMAN:  We reviewed it.  I think I sent it.  I
 2    may have sent it to him.  I don't know.  But I know we
 3    reviewed it.
 4              THE COURT:  Okay.  I just want to know whether
 5    anything he's read in this case, whether he could understand
 6    it.  Okay.  So there won't be a Rule 11.  I think I was just
 7    getting that drift.  So I'm going to move over to that.
 8              Are you under the effects of any drugs, medication,
 9    or alcohol at this time, Mr. Byrd?
10              THE DEFENDANT:  No.
11              THE COURT:  Okay.  And are you being treated by any
12    medical or mental health professional?
13              THE DEFENDANT:  No, I'm not.
14              THE COURT:  Okay.  And do you think you're thinking
15    clearly today?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Okay.  And are you ready to proceed with
18    the hearing?
19              THE DEFENDANT:  Yes, your Honor.
20              THE COURT:  Okay.  Mr. Fishman, are you aware of any
21    negative information concerning your client's competence to
22    proceed?
23              MR. FISHMAN:  None.
24              THE COURT:  And Mr. Gilmer-Hill, are you aware of any
25    of that type of information regarding Mr. Byrd?
```

| | |
|---|---|
| 1 | MR. GILMER-HILL:  No, Your Honor. |
| 2 | THE COURT:  Okay.  Well, based upon your own |
| 3 | statements, Mr. Byrd, those of your lawyer and Mr. |
| 4 | Gilmer-Hill, I find that you are competent to offer a plea in |
| 5 | this case today and we will proceed. |
| 6 | Do you understand that you have a constitutional |
| 7 | right to remain silent and not incriminate yourself? |
| 8 | THE DEFENDANT:  Yes, I do. |
| 9 | THE COURT:  And do I understand correctly that you |
| 10 | wish to waive or give up that right for the purpose of |
| 11 | pleading guilty in this case? |
| 12 | THE DEFENDANT:  Correct. |
| 13 | THE COURT:  Okay.  And again, I asked you this |
| 14 | earlier, but did you receive a copy of the indictment, which |
| 15 | is the charges pending against you? |
| 16 | THE DEFENDANT:  Yes, I have. |
| 17 | THE COURT:  You have a right for me to read that to |
| 18 | you in court today.  Would you like me to do that? |
| 19 | THE DEFENDANT:  No. |
| 20 | THE COURT:  Okay.  You are charged in this indictment |
| 21 | -- let me just get it out -- with a violation in Count 1 with |
| 22 | conspiracy to possess with intent to distribute and distribute |
| 23 | a controlled substance.  And the statutory maximum -- so that |
| 24 | the most -- the longest period of incarceration you could face |
| 25 | is up to life in prison.  Do you understand that? |

November 7, 2016                                           8

```
 1            THE DEFENDANT:  Yes.

 2            THE COURT:  And the minimum is ten years.

 3            THE DEFENDANT:  Yes.

 4            THE COURT:  And do you understand that the maximum

 5  fine is 10 million?

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  Okay.  And that you could also face five

 8  or more years of supervised release?

 9            THE DEFENDANT:  Yes.

10            THE COURT:  Okay.  In Count 2, you're charged with

11  possession with intent to distribute the controlled substance,

12  aiding and abetting.  Count 3, conspiracy to launder monetary

13  instruments.  And I don't have the statutory maximums for

14  these.

15            MR. GILMER-HILL:  Actually, your Honor --

16            THE COURT:  Ordinarily I follow the plea agreement,

17  but I don't have a plea agreement.

18            MR. GILMER-HILL:  Actually, your Honor, I believe

19  that the Court's been presented with three pages that

20  summarize some of those relevant points, including the

21  penalties.

22            THE COURT:  Okay.  Thank you.  I see I have.  Okay.

23  Counts 1 and 3, I think as I already said, you would face up

24  to life, but a minimum of ten years.  Count 2 though is not on

25  here because --
```

1          MR. GILMER-HILL:  Oh, I see.

2          THE COURT:  This is for the plea agreement, which

3    apparently was to two counts.

4          MR. GILMER-HILL:  I'm happy to state that, your

5    Honor.

6          THE COURT:  Okay.  Can you state the maximum penalty

7    for Count 2, which is the possession with intent to

8    distribute?

9          MR. GILMER-HILL:  And I apologize, your Honor.

10   Actually for Counts 1 and 2, being the conspiracy to possess

11   with intent to distribute controlled substance, specifically a

12   thousand kilograms or more of marijuana, as well as the

13   substantive possession with intent to distribute charged in

14   Count 2, for each of those two counts, the maximum penalties

15   are life imprisonment with a mandatory minimum penalty of ten

16   years and/or a $10 million fine.

17          It's as to Count 3, the conspiracy to launder

18   monetary instruments, that Mr. Byrd faces a 20-year maximum

19   penalty and/or either a $500,000 fine or twice the value of

20   the property that was laundered.

21          THE COURT:  And are there any other counts?

22          MR. GILMER-HILL:  Just those three counts, your

23   Honor.  At this point, perhaps just so the record's clear,

24   this plea is not pursuant to a traditional plea agreement or

25   any plea agreement.

November 7, 2016                                          10

1          THE COURT:  Okay.

2          MR. GILMER-HILL:  But for clarity of the record as to

3    what I anticipate to happen and what I believe Mr. Fishman may

4    anticipate happening, it's my understanding that Mr. Byrd will

5    be pleading guilty to Counts 1 and 3 without a Rule 11 plea

6    agreement.  Consistent with the prior communications from Mr.

7    Fishman to the Court and the notice that he filed, I believe

8    Mr. Byrd understands that he could proceed to trial on

9    relation to any counts that he does not plead guilty to.

10         THE COURT:  I'm sorry.  What was that?  I was just

11   reading.

12         MR. GILMER-HILL:  Consistent with the e-mail

13   communications and the notice that Mr. Fishman had previously

14   filed, Mr. Fishman and Mr. Byrd are aware that by pleading

15   guilty to just some counts but not others, the Government

16   could proceed to trial on the remaining counts if the

17   Government elects to do so.

18         THE COURT:  Okay.

19         MR. GILMER-HILL:  I have advised -- I have relayed to

20   Mr. Fishman that if Mr. Byrd pleads to both Count 1 and Count

21   3, each of the conspiracy counts, most likely the Government

22   will dismiss Count 2.  But it's my understanding that Mr. Byrd

23   is not moving forward based upon a commitment as to that.

24   Just that we have relayed the fact that with each of those

25   conspiracy convictions that the Government wouldn't see a

November 7, 2016

```
 1      point on -- most likely not see a point proceeding on just the
 2      substantive count of Count 2.
 3             THE COURT:  Okay.  Let me do two things.  First of
 4      all, I just want to make sure that Mr. Byrd heard the portion
 5      about the maximum penalties you could face if found guilty or
 6      pleading guilty on all of the counts on the indictment.
 7             THE DEFENDANT:  Yes.
 8             THE COURT:  Okay.  And also forfeiture can be
 9      ordered.  There's a forfeiture count in the indictment.  But
10      let me ask you, Mr. Fishman, I received document 105 on
11      October 26th that says your client intends to plead guilty to
12      Count 1.  Is he now pleading guilty to 1 and --
13             MR. FISHMAN:  Right.
14             THE COURT:  What is he pleading?
15             MR. FISHMAN:  The negotiations over Rule 11 agreement
16      were fruitless.
17             THE COURT:  Okay.
18             MR. FISHMAN:  So I filed that notice -- if you say it
19      was the 26th, I can't remember.  But that's the date that's on
20      there.  That must have been the day I did it.  Notifying you
21      and the Government he was going to plead guilty to Count 1.
22      It was my hope at that time that that would be sufficient.
23      But I've had further conversations with people from the
24      Government, I understand in the interest of symmetry because
25      of what other people have plead to, they're insisting on a
```

1     plea to Count 3 and Mr. Byrd is going to plead to Count 3.

2          It's my understanding, based on some conversations I

3     had yesterday, that Count 2 is going to be dismissed when you

4     sentence him on Counts 1 and 3.  But if it's up in the air,

5     then it's up in the air.  That doesn't change our decision on

6     what we're going to do.  I can't imagine why the Government,

7     the Court, or anybody would be interested in trying one

8     possession with intent to deliver when the man's going to jail

9     for ten years on a weak case.

10         THE COURT:  Okay.  Let me just say this in general,

11    Mr. Byrd.  In the federal system, judges are not permitted to

12    get involved in plea negotiations.  In state court, they can

13    get involved and say, hey, Mr. Gilmer-Hill, what about Count

14    2?  And can go get into those sorts of things.  I'm not

15    permitted to do that here.  That has to take place entirely

16    between the lawyer for the Government and your lawyer.

17         So I can't comment on whether Count 2 should or

18    shouldn't proceed.  That's entirely between those of you

19    sitting out there and not here.  So there are good reasons for

20    that, so the judges aren't pressuring people to plead guilty

21    and those sorts of things.

22         So I heard what Mr. Gilmer-Hill said just as you did,

23    as it seemed unlikely that Count 2 would proceed but still

24    could and those sorts of things.  So I want to make sure you

25    heard that as well.

November 7, 2016

1        THE DEFENDANT:  Yes.

2        THE COURT:  Mr. Fishman?

3        MR. FISHMAN:  No.  He understands all of that and he

4   also knows the difference between state court and federal

5   court.  And if we had the right to waive the problem that

6   doesn't let judges get involved in it, we'd waive it.  But we

7   know we can't.  Here we are.

8        THE COURT:  Okay.  Well, Mr. Gilmer-Hill, are you

9   satisfied that Mr. Byrd knows what's going on here?  Anything

10  further that you wish to say to clarify?

11       MR. GILMER-HILL:  With Mr. Fishman's representation,

12  I'm quite confident that there have been plenty of discussions

13  and Mr. Byrd does fully understand how things are going to

14  proceed.  As the Court, of course, I'm sure knows, the reason

15  I clarify the record is because Rule 11 would require the

16  Court to be fully apprised if there were any sort of even

17  unwritten agreement as to what was going to proceed.

18       THE COURT:  Okay.

19       MR. GILMER-HILL:  That's why I wanted to make sure

20  there was simply a clear record.

21       THE COURT:  Thank you.  Thank you, very much.  Mr.

22  Byrd, this may seem repetitive, but I want to go back to

23  something, which is that you have a right to have -- this is

24  obviously a serious felony charge.  You have a right to have

25  lawyer represent you during all stages of the proceeding.

November 7, 2016

```
 1              I see you have Mr. Fishman here in court with you.
 2     And I want to make sure you understand that if you can't
 3     afford a lawyer at any time during the process, the Court will
 4     appoint one to serve at the public's expense.  Do you
 5     understand that?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Okay.  And have you discussed this case
 8     completely with your lawyer?
 9              THE DEFENDANT:  Yes, I have.
10              THE COURT:  And are you confident that you understood
11     his advice?
12              THE DEFENDANT:  Yes.
13              THE COURT:  And having said that, the decision to
14     plead guilty still has to be your own decision and not your
15     lawyer's decision.  Do you understand that as well?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Okay.  And I understand from what has
18     been filed and what's been discussed here that you've
19     expressed the decision to plead guilty without the Rule 11
20     plea agreement.  Is that the case as well?
21              THE DEFENDANT:  Yes.
22              THE COURT:  And were you either shown a plea
23     agreement or did you discuss a plea agreement that the
24     Government offered?
25              THE DEFENDANT:  We discussed.
```

November 7, 2016                                    15

1          THE COURT:  And you decided to reject it?

2          THE DEFENDANT:  That's correct, yes.

3          THE COURT:  Okay.  And Mr. Gilmer-Hill, that's your

4    understanding as well?  You provided proposed plea agreements?

5          MR. GILMER-HILL:  That is correct, your Honor.

6          THE COURT:  Okay.  Mr. Byrd, just one other question

7    regarding your lawyer.  Are you satisfied with your lawyer's

8    work on this case?

9          THE DEFENDANT:  Yes, I am.

10         THE COURT:  And I have no reason to doubt that.  But

11   it's important for the integrity of any criminal proceeding to

12   know that the defendant has had effective assistance of

13   counsel.  Has anyone tried to force you or threaten you in any

14   way to get you to plead guilty?

15         THE DEFENDANT:  No.

16         THE COURT:  And has anybody done anything you think

17   is improper, illegal, unethical to get you to plead guilty?

18         THE DEFENDANT:  No.

19         THE COURT:  Okay.  Are there any promises of any kind

20   that have been made to you about to get you to plead guilty?

21         THE DEFENDANT:  No.

22         THE COURT:  Okay.  Is this, in fact, your own

23   decision then?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Okay.  And is this decision because

November 7, 2016

1    you're actually guilty of the two crimes you intend to plead

2    guilty to?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  Now, do you understand that the

5    crime you're pleading or crimes you're pleading guilty to are

6    felony offenses, and if your plea is accepted you'll be

7    adjudged guilty of those offenses and that such adjudication

8    can deprive you of the right to vote?

9              THE DEFENDANT:  Yes, I am.

10             THE COURT:  The right to hold public office?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And the right to serve on a jury?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Also under federal law, once you've been

15   adjudicated guilty of a felony, you're prohibited from

16   possessing a firearm or ammunition of any sort.  Do you

17   understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  And I say this to everybody who's

20   sitting where you're sitting now.  It does not matter what

21   kind of case it is.  If it's a felony case, I stop right here

22   and I repeat that the fastest way back into this courtroom or

23   one like it is to serve your time in custody, or whatever the

24   penalty might be, and possess a firearm or ammunition.  So I

25   just want to remind you, again, that whatever the reason could

1    possibly be, it is prohibited.

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  Mr. Gilmer-Hill?

6              MR. GILMER-HILL:  Your Honor, if I might just make a

7    point for the record as to this.  At the time of his arrest,

8    firearms were seized from Mr. Byrd.  I've discussed with Mr.

9    Fishman the fact that the Government had seized those

10   firearms.  I believe there will be further discussions between

11   our office and Mr. Fishman as to whether the firearms will

12   simply be forfeited by Mr. Byrd or whether he will transfer

13   those firearms.  I just want to make sure that that was part

14   of the record while you were addressing the firearm portion.

15             THE COURT:  Thank you.

16             MR. FISHMAN:  Just so the Court knows, it's true and

17   he's going to forfeit and we don't really care about the guns.

18   But he had a CCW permit at the time.  It wasn't like he was

19   walking around --

20             THE COURT:  Okay.  But after he leaves here, he will

21   be adjudicated --

22             MR. FISHMAN:  The guns are long since gone.  We're

23   going to forfeit them.  I'll get with Ms. Beck and we'll take

24   care of it.  But I just want the Court to know it's not like

25   he was toting a pistol around without a license.

1          THE COURT:  I didn't have any preconceived idea of

2    what was going on.  But I just care about Mr. Byrd.  I've only

3    met him about 20 minutes ago.  But I don't want him back on

4    another case after this case concludes or after this hearing

5    concludes.  I don't want him to be in possession of a firearm

6    that would potentially jeopardize his liberty.

7          MR. FISHMAN:  Agreed.

8          THE COURT:  Now, Mr. Byrd, you have a number of

9    constitutional rights that you're giving up by pleading

10   guilty.  And I'm going to describe those rights in general

11   terms and ask if you understand that you're giving them up.

12         You have a right to plead not guilty to any offense

13   that's charged against you and to assist in that plea.  You

14   have a right to a trial by a jury.  And at that trial, you

15   would be presumed to be innocent and the Government would have

16   to prove you're guilty beyond a reasonable doubt.  Do you

17   understand those rights?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  And do you wish to give them up?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You have a right to the assistance of

22   counsel for your defense, which we discussed earlier,

23   appointed by the Court, if necessary, at the trial and every

24   other stage of the proceeding and the right to see and hear

25   all of the witnesses and have them cross-examined in your

1    defense.  And you have the right to decline to testify unless

2    you voluntarily decided to do so in your own defense.  And you

3    have the right to compel the attendance of witnesses to

4    testify in your defense.  Do you understand those rights?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  And do you wish to give them up?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay.  Do you understand that if you

9    decided not to testify or put on any evidence, the fact that

10   you did not testify or put on evidence could not be used

11   against you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Okay.  And do you understand that by

14   entering a plea of guilty, if your plea is accepted, there

15   will be no trial and you will have waived or given up your

16   right to a trial as well as the other rights associated with

17   the trial?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  Mr. Byrd, are you a U.S. citizen?

20             THE DEFENDANT:  Yes, I am.

21             THE COURT:  Okay.  There's various things that happen

22   if you're not a citizen.  So I don't have to go into that.

23             Mr. Gilmer-Hill, could you place the nature of the

24   offense that Mr. Byrd is pleading guilty to and the elements

25   the Government would have to prove if the case were to go to

1    trial?

2              MR. GILMER-HILL:  Certainly, your Honor.

3              THE COURT:  Thank you.

4              MR. GILMER-HILL:  As mentioned, it's my understanding

5    that Mr. Byrd will be pleading guilty to conspiracy to possess

6    with intent to distribute controlled substances as charged in

7    Count 1 of the indictment.  The elements for that offense are

8    that the defendant knowingly and intentionally entered into an

9    agreement with others and that the purpose of the agreement

10   was to possess with the intent to distribute a controlled

11   substance, specifically 1,000 kilograms or more of a substance

12   containing a detectable amount of marijuana.

13             It's my understanding that Mr. Byrd also intends to

14   plead guilty to Count 3 of the indictment, which charges

15   conspiracy to launder monetary instruments.  And the elements

16   for that offense are that the defendant knowingly and

17   intentionally entered into an agreement with others and that

18   the purpose of the agreement was to commit an offense in

19   violation of Title 18 United States Code, Section 1956 or

20   1957.

21             Specifically to conduct or cause others to conduct a

22   financial transaction as defined within the statutes by title

23   18 United States Code 1956, Subsection (c)(4), involving cash,

24   vehicles, real property, or any property derived from drug

25   trafficking proceeds.  And to do so while knowing the property

1   is the proceeds of at least some form of unlawful activity and

2   either intending to promote drug trafficking or knowing that

3   the financial transaction was designed in whole or in part to

4   conceal or disguise the nature, source, ownership, or control

5   of these proceeds or knowing that the financial transaction

6   was designed in whole or in part to avoid the transaction

7   reporting requirement.

8         This offense can also be committed by virtue of the

9   defendant knowingly and intentionally entering into an

10   agreement with others for the purpose of committing an offense

11   in violation of those same statutes.  Specifically doing so to

12   engage in or cause others to engage in a monetary transaction

13   as defined in Title 18 United States Code, Section 1957, with

14   a financial institution such as a bank, credit union, money

15   transmitter, real estate company, or car dealership utilizing

16   drug trafficking proceeds in an amount greater than $10,000.

17         I guess if the Court likes, I can speak more simply

18   to the elements.  There are multiple ways by which this

19   offense could be committed.

20         THE COURT:  Yeah.

21         MR. GILMER-HILL:  Those that I just listed before or

22   this manner of engaging in a financial -- excuse me, a

23   monetary transaction with a financial institution in an amount

24   greater than $10,000 while knowing that the proceeds are

25   derived from at least some form of unlawful activity.

```
 1              THE COURT:  Okay.  Well, thank you, very much.  I
 2   know that this is a rather complex set of elements.  Mr.
 3   Fishman, do you agree that those are the elements the
 4   Government would have to prove if your client went to trial?
 5              MR. FISHMAN:  Agreed.
 6              THE COURT:  Okay.  Mr. Byrd, I want to move on to
 7   another portion of the hearing.  If I sentence you -- and in
 8   this case there's a mandatory minimum of ten years -- to a
 9   period of custody, I will also sentence you to what we call
10   supervised release.  I don't know if you were in the courtroom
11   a moment ago when we had a supervised release violation
12   hearing.
13              THE DEFENDANT:  Yes.
14              THE COURT:  If you violate a condition of
15   supervision, I can send you back to prison or into custody for
16   addition time even though you completed your sentence on this
17   case that you're admitting to today.  Do you understand that?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Okay.  I can also order you to pay
20   restitution to any victim of your conduct.  There's
21   forfeiture, but I don't know if there's restitution in this
22   case, Mr. Gilmer-Hill.
23              MR. GILMER-HILL:  I don't think the restitution --
24   excuse me.  I don't think restitution is an issue in this
25   matter.
```

```
 1              THE COURT:  Okay.  Mr. Byrd, any sentence you receive
 2    will be governed by federal law, including provisions of the
 3    federal sentencing guidelines.  Under the law, I will make the
 4    final decision concerning your sentence aside from the
 5    mandatory minimum, which congress has set.  I'll be guided in
 6    part by your sentencing guideline score which combines the
 7    seriousness of the offense you're charged with or the offenses
 8    along with your own criminal history which I know nothing
 9    about sitting here today.  And it results in a range of
10    sentences.
11              My decision about your sentence may be the same as
12    the Government has estimated or your lawyer has estimated, but
13    it could be different.  It could be higher or it could be
14    lower than they have estimated.  Do you understand that?
15              THE DEFENDANT:  Yes, I do.
16              THE COURT:  And just because the Government makes a
17    certain recommendation such as that your sentence be at a
18    certain level, that you receive credit for something, or have
19    an enhancement for another reason does not require me to
20    accept that recommendation.  Do you understand that?
21              THE DEFENDANT:  Yes, I do.
22              THE COURT:  Okay.  Mr. Fishman, are you confident
23    that your client fully understands this?
24              MR. FISHMAN:  That he understands the consequence of
25    his plea?
```

```
 1            THE COURT:  Yes.
 2            MR. FISHMAN:  Absolutely.
 3            THE COURT:  Okay.  And do you believe that his
 4   decision to plead guilty is in your client's best interest?
 5            MR. FISHMAN:  I think it's in his best interest.
 6   It's also his only option, as far as I'm concerned.
 7            THE COURT:  Okay.  All right.  Well, Mr. Byrd, having
 8   gone over your rights and your decision to plead guilty as
 9   well as the charges that the Government is bringing and the
10   elements they would have to prove if you were to go to trial,
11   to the charges contained in Count 1 and Count 3 of the
12   indictment, which we have just discussed, how do you wish to
13   plead?
14            THE DEFENDANT:  Guilty.
15            THE COURT:  Okay.  Now I'd like you to tell me in
16   your own words what you did that makes you guilty of these two
17   offenses.
18            MR. FISHMAN:  Would the Court allow me to --
19            THE COURT:  I want to start with Mr. Byrd saying what
20   he believes he did and then have you continue from there.
21   What I find, Mr. Fishman, just by way of explanation, is that
22   you have obviously talked a great deal and worked with your
23   client a greet deal and if all I hear is yes, no, yes, no, I'm
24   not -- I need to be confident of what he's saying yes and no
25   to.  I need to -- because what ultimately happens is we get to
```

1    the next case with someone.

2          We have no idea what they say that they have actually

3    done and we don't know whether we have predicate offenses in

4    concern kind of cases and things like that.  So I want to hear

5    from your client's voice something about this conduct and then

6    you can take it from there.

7          MR. FISHMAN:  I'm just going to tell you that I

8    haven't discussed that -- it didn't cross my mind that that

9    was going to happen.  So I haven't talked to him about that.

10   Do you want me to just have a few minutes and tell him?

11         THE COURT:  Yeah.  That would be great.

12               (Pause In Proceedings)

13         MR. FISHMAN:  Okay.

14         THE COURT:  Okay.  Mr. Byrd, what can you tell me

15   about what you did that makes you believe you're guilty of

16   these two offenses?

17         MR. FISHMAN:  Should he do it one count at a time?

18         THE COURT:  He can just get started.  And then Mr.

19   Gilmer-Hill and you -- I'm going to look at these elements and

20   we'll see if he's met them.

21         MR. FISHMAN:  Okay.

22         THE DEFENDANT:  In the beginning of 2009, I possessed

23   an amount of marijuana which was what they described over

24   2,000 --

25         MADAM COURT REPORTER:  Can you keep your voice up,

1    please?

2            THE COURT:  We need to be able to hear so that the

3    record can be complete.

4            THE DEFENDANT:  In the beginning of 2009, I possessed

5    some marijuana entering an agreement with a couple of people,

6    so.

7            THE COURT:  Okay.  All right.  And was it 1,000

8    kilograms or more?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Okay.  And was there an agreement with

11   those other people about what you would do with the marijuana?

12           THE DEFENDANT:  Sell it.

13           THE COURT:  Yeah.  Mr. Fishman, do you want to -- and

14   I appreciate you speaking about that.  Do you want to go ahead

15   and ask your client some more questions to make sure all of

16   the elements have been met?

17           MR. FISHMAN:  Yes.  Mr. Byrd, in that time period

18   beginning in the beginning of 2009 and going through the time

19   of the arrest of one of the Co-defendants, did you agree with

20   other people to possess marijuana and then eventually sell it?

21           THE DEFENDANT:  Yes.

22           MR. FISHMAN:  And you're aware that the conspiracy is

23   an agreement to commit a crime, criminal conspiracy is an

24   agreement to commit a crime?

25           THE DEFENDANT:  Yes.

1          MR. FISHMAN:  And you know that at least in the

2   federal system, possession with intent to distribute or

3   distributing marijuana is still a crime.  You know that?

4          THE DEFENDANT:  Yes.

5          MR. FISHMAN:  And you're confident, are you not, that

6   the quantity involved was in excess of 2,200 pounds which

7   would be more than 1,000 kilograms, correct?

8          THE DEFENDANT:  Yes.

9          MR. FISHMAN:  I think that covers all the elements

10  personally.

11         THE COURT:  Okay.  Mr. Gilmer-Hill?

12         MR. GILMER-HILL:  I would ask simply to speak as to

13  venue, that some portion of the conduct occurred in the

14  Eastern District of Michigan.

15         MR. FISHMAN:  I can ask that.  Mr. Byrd, in the

16  middle of this agreement and conspiring, did some of it happen

17  here in the Eastern District of Michigan?  In other words,

18  were funds either sent from here or was the weed sold here?

19         THE DEFENDANT:  Yes.

20         MR. GILMER-HILL:  The Government's satisfied as to

21  Count 1, your Honor.

22         THE COURT:  Okay.

23         MR. FISHMAN:  I'm satisfied.

24         THE COURT:  Okay.  So am I.

25         MR. FISHMAN:  Do you want him to address Count 3?

```
 1              THE COURT:  Yes, please.

 2              THE DEFENDANT:  The proceeds from the money --

 3              THE COURT:  The money that was derived from selling

 4   the marijuana?

 5              THE DEFENDANT:  Yes.  Was used to buy stuff.

 6              THE COURT:  Okay.  What kind of stuff?

 7              THE DEFENDANT:  Clothes, jewelry.

 8              THE COURT:  Were cars and things like that involved?

 9              THE DEFENDANT:  Yeah.

10              THE COURT:  Okay.  Mr. Fishman?

11              MR. FISHMAN:  Mr. Byrd, as a result of the agreement

12   to sell the marijuana, did you make a certain amount of money?

13              THE DEFENDANT:  Yes.

14              MR. FISHMAN:  And did you conduct what we might call

15   financial transactions, like buying jewelry or buying a car or

16   spending money at the race track or anything else with the

17   money that you made illegally?

18              THE DEFENDANT:  Yes.

19              MR. FISHMAN:  And are you confident that you -- the

20   purchase of this and the things that were done with the money

21   amounted to more than $10,000?

22              THE DEFENDANT:  Yes.

23              MR. FISHMAN:  And are you also confident that you

24   didn't tell -- if you bought jewelry, for instance, you didn't

25   go in and tell the jeweler that this was weed money or illegal
```

1    money, correct?

2              THE DEFENDANT:  That's correct.

3              MR. FISHMAN:  And the same thing applied to anything

4    else that you purchased?  You didn't say, by the way, this is

5    made from the sell of marijuana, correct?

6              THE DEFENDANT:  That's correct.

7              MR. FISHMAN:  So you concealed it from other people,

8    right?

9              THE DEFENDANT:  Yes.

10             MR. FISHMAN:  Okay.  I don't have anything further.

11             THE COURT:  And did that also take place, some of

12   that, in the Eastern District of Michigan?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Okay.  And the reason we ask that is

15   that's how it becomes appropriate for the case to be handled

16   here as opposed to somewhere else.  Mr. Gilmer-Hill?

17             MR. GILMER-HILL:  Your Honor, I guess given the

18   various elements, just for clarity, I would seek clarification

19   that at least a vehicle in excess of $10,000 or valued in

20   excess of $10,000 was among the items that were purchased with

21   the drug proceeds?

22             MR. FISHMAN:  Did you buy a vehicle that was worth

23   more than 10 grand?

24             THE DEFENDANT:  Yes.

25             MR. FISHMAN:  Okay.

```
 1              MR. GILMER-HILL:  With the drug proceeds?

 2              THE DEFENDANT:  Yes.

 3              MR. FISHMAN:  With the proceeds from the sell of the

 4   marijuana?

 5              THE DEFENDANT:  Yes.

 6              MR. GILMER-HILL:  Thank you, your Honor.  The

 7   Government's satisfied.

 8              THE COURT:  Okay.  Mr. Fishman, are you satisfied

 9   that there's a proper factual basis for this second -- or the

10   third count as well?

11              MR. FISHMAN:  Yes.

12              THE COURT:  And Mr. Gilmer-Hill already indicated

13   that he is.  Well, I'm also satisfied.  Mr. Byrd, I find that

14   your proposed guilty plea is supported by the facts that you

15   know what you're doing today and that you're acting

16   competently and voluntary in giving up your rights to a trial.

17   I'm prepared to accept your guilty plea to Counts 1 and 3.

18   Are you sure you'd like me to accept your plea?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Therefore, it is the finding of the Court

21   in the case of the United States of America vs Leshoun Byrd

22   that Mr. Byrd is fully competent and capable of entering an

23   informed plea, that you are aware of the nature of the charges

24   and the consequences of your plea, and that your plea of

25   guilty is knowing and voluntary and supported by a factual
```

1    basis.

2              Your plea of guilty to Counts 1 and 3 is, therefore,

3    accepted.  And you are now adjudged guilty of those two

4    offenses.  Your case will be referred to the probation

5    department for the preparation of a presentence report.

6              You're required to cooperate with the probation

7    department consistent with the advice of your lawyer.  And you

8    have a right to have your lawyer present with you when you're

9    interviewed by the probation department.

10             They will ask a great many questions about your

11   personal history and characteristics and all sorts of things

12   related to this case.  They will compile a report that will be

13   provided to you and your lawyer and the Government.  You'll

14   have an opportunity to make objections or corrections to it.

15   And it will then be presented to the Court.

16             Sentencing on this case will take place March 7th of

17   2017 at 1:00 PM in this courtroom.  You're required to appear

18   at that date and time.  And failure to appear would be

19   considered a violation of the conditions of your bond.  And an

20   arrest warrant would be issued and your bond could be

21   cancelled.  Failure to appear is also a separate offense that

22   could result in additional charges.  Do you understand that?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Okay.  Mr. Gilmer-Hill, is there any

25   request from the Government regarding the bond status?

November 7, 2016                                          32

1          MR. GILMER-HILL:  No, Your Honor.  No objection to

2    Mr. Byrd remaining out on bond at this time.

3          THE COURT:  Okay.  All right.  Well, that will

4    conclude our hearing.  And I'll just remind you that you're

5    under the same terms and conditions for the bond as when you

6    were first placed on it.

7          THE DEFENDANT:  Yes.

8          MR. GILMER-HILL:  Actually, your Honor.  I apologize

9    for the interruption.

10          THE COURT:  Okay.  No, go right ahead.

11          MR. GILMER-HILL:  Your Honor, at this point in time,

12    the Government will make an oral motion to dismiss Count 2 as

13    to Mr. Byrd.

14          THE COURT:  Oh, I see.  Okay.  Well, that is granted.

15    I assume there's no objection to dismissing Count 2?

16          MR. FISHMAN:  No objection.

17          THE COURT:  Okay.  All right.  So Count 2 is

18    dismissed.  And we will next see you on March 7th, 2017 at

19    1:00 PM.

20          THE DEFENDANT:  Okay.

21          MR. GILMER-HILL:  Thank you, your Honor.

22                    (Proceedings Concluded)

23                 -         -         -

24

25

November 7, 2016

1            CERTIFICATE OF OFFICIAL COURT REPORTER

2         I, Jeseca C. Eddington, Federal Official Court

3    Reporter, in and for the United States District Court Eastern

4    District of Michigan, appointed pursuant to provisions of Title

5    28, United States Code, Section 753, do hereby certify the

6    foregoing 32 pages are a true and correct transcript of the

7    proceedings had in the matter of UNITED STATES OF AMERICA

8    versus LESHOUN DEANDRE BYRD, Case No. 15-20040 held on November

9    7, 2016.

10

11   /s/ JESECA C. EDDINGTON_____        2/9/2017_
     Jeseca C. Eddington, RDR, RMR, CRR, FCRR       Date
12   Federal Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25